UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT EARL PARKS,

        Petitioner,

                                 Case No. 13-cv-13132

v.

                                 Honorable Linda V. Parker

KENNETH ROMANOWSKI,

        Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION
FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A
CERTIFICATE OF APPEALABILITY, AND GRANTING
LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Petitioner Robert Earl Parks ("Petitioner") has filed a *pro se* habeas corpus petition challenging his state conviction for first-degree criminal sexual conduct. *See* Mich. Comp. Laws § 750.520b(1)(f) (sexual penetration causing personal injury to the victim and using force or coercion to accomplish penetration). In his habeas petition, Petitioner raises several issues regarding his right to present a defense, the state prosecutor's conduct, the state trial court's rulings and omissions, his trial attorney's performance, the denial of his motion for substitution of counsel, the sufficiency of the evidence, and the cumulative effect of errors. Respondent Kenneth Romanowski urges the Court through counsel to deny the

petition.  Having reviewed the pleadings and state-court record, the Court finds

that Petitioner's claims lack merit.  Accordingly, the Court will deny the petition.

## I.  Background

Petitioner was charged in Macomb County, Michigan with one count of

criminal sexual conduct in the first degree, and one count of unarmed robbery.  He

was tried without a jury in Macomb County Circuit Court where the evidence

established that,

> on the day at issue, defendant argued with CW—his then girlfriend—
> at their home.  There was testimony that defendant struck her several
> times, dragged her by her hair into their bedroom and shut the door.
> Once in the bedroom, defendant again began to strike her. CW
> testified that she thought that he was going to kill her; she said she
> was crying and asked him to stop hitting her.  At some point
> defendant ordered her to take her clothes off and get on the bed.  He
> then began to penetrate her while she cried and, at one point,
> wretched.  Even after he went to the attached bathroom, she did not
> move from the bed because she was scared and did not believe she
> was free to leave.  When he returned from the bathroom he ordered
> her to "stop acting that way" and asked how he was going "to bust a
> nut with your crying and acting this way."

> After defendant forced CW to have sex, he took her to a cellular
> telephone store to purchase a cell phone that she had allegedly
> promised him.  An employee saw CW and recalled that she appeared
> frightened.  Defendant purchased a cell phone with his debit card but
> told CW that she had to reimburse him.  He then took her to a bank
> where he used her debit card to withdraw $200.  After returning to the
> home, defendant left without CW to withdraw another $300 from her
> account.  She then went to a neighbor's home and called the police.

> Defendant testified at trial and admitted that he slapped CW and
> dragged her into the bedroom by her hair during an argument.
> However, he stated that she consented to having sex with him to make

2

up after their argument.

*People v. Parks*, No. 303683, 2012 WL 3101832, at *1 (Mich. Ct. App. July 31, 2012)(unpublished).

On February 8, 2011, the trial court acquitted Petitioner of unarmed robbery, but found him guilty, as charged, of first-degree criminal sexual conduct.  On April 5, 2011, the court sentenced Petitioner as a habitual offender to imprisonment for twenty-five to forty years with no credit for days served because Petitioner was on parole when the crime occurred.

The Michigan Court of Appeals affirmed Petitioner's conviction, but remanded his case for re-sentencing because Petitioner did not properly waive his right to assistance of counsel at sentencing.  *See id.*[1]  On April 1, 2013, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues, *see People v. Parks*, 493 Mich. 952; 828 N.W.2d 44 (2013), and on June 25, 2013, the Michigan Supreme Court denied Petitioner's motion for reconsideration.  *See People v. Parks*, 494 Mich. 873; 832 N.W.2d 218 (2013).

On July 22, 2013, Petitioner filed his habeas corpus petition under 28 U.S.C. § 2254.  He alleges as grounds for relief that:  (1) he was denied his constitutional right to present a defense; (2) the prosecutor engaged in misconduct; (3) the trial court abused its discretion and denied him a fair trial; (4) trial counsel failed to

---

[1] The record does not indicate what happened on remand for re-sentencing.

3

adequately perform his professional responsibilities; (5) the cumulative effect of these errors deprived him of a fair trial; (6) the trial court failed to assess his ability to reimburse the county for court-appointed attorney fees; (7) the trial court erred by denying his motion for substitute counsel; and (8) the evidence was insufficient. (ECF No. 1 at Pg. ID 19–35.)

Although Respondent maintains that Petitioner did not exhaust state remedies for two of his claims and that he procedurally defaulted three other claims, "the doctrines of exhaustion and procedural default raise only federal-state comity concerns and are not a jurisdictional limitation of the power of the court." *Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991). Petitioner's claims lack merit or are not cognizable on habeas review. The Court therefore finds it more efficient to proceed to the merits of Petitioner's claims than to analyze whether they are exhausted or procedurally defaulted. The alleged failure to comply with the exhaustion and procedural default doctrines is excused.

## II.  Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97, 131 S. Ct. 770, 783 (2011). Pursuant to § 2254, the court

may not grant a state prisoner's application for the writ of habeas corpus unless the

state court's adjudication of the prisoner's claims on the merits

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000)

(O'Connor, J., opinion of the Court for Part II).

"[A] federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly.  Rather, that application

must also be unreasonable."  *Id.*, 529 U.S. at 411, 120 S. Ct. at 1522.  "AEDPA

thus imposes a 'highly deferential standard for evaluating state-court rulings,'

*Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 2066 n.7 (1997), and

5

'demands that state-court decisions be given the benefit of the doubt,' *Woodford v.*

*Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 360 (2002) (*per curiam*)." *Renico v.*

*Lett*, 559 U.S. 766, 773, 130 S. Ct. 1855, 1862 (2010).

"A state court's determination that a claim lacks merit precludes federal

habeas relief so long as 'fairminded jurists could disagree' on the correctness of the

state court's decision." *Richter*, 562 U.S. at 101, 131 S. Ct. at 786 (quoting

*Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 2149 (2004)).  To

obtain a writ of habeas corpus from a federal court, a state prisoner must show that

the state court's ruling on his claims "was so lacking in justification that there was

an error well understood and comprehended in existing law beyond any possibility

for fairminded disagreement." *Id.*, 562 U.S. at 103, 131 S. Ct. at 786-87.

### III.  Analysis

### A.  Claim 1: Constitutional Right to Present a Defense

Petitioner alleges he was deprived of his right to present a defense because

evidence was suppressed and two witnesses were not allowed to testify.  The

evidence in question consists of a medical report summarizing the results of a

physical examination of the complainant, a recording of the complainant's 911 call

to the police, lab reports, and pictures taken of the complainant following the

alleged rape.  Petitioner claims that none of this evidence was provided before trial

and that two witnesses (the medical technician who examined the complainant

after the alleged rape and his friend Rhonda Allen) were never called to testify.

Petitioner claims that the medical technician would have testified that the complainant was not physically injured, and Ms. Allen would have testified that Petitioner spent a night with her. According to Petitioner, Ms. Allen's testimony would have demonstrated that the complainant had a motive to falsify her accusation against Petitioner.

The Michigan Court of Appeals reviewed Petitioner's claim for "plain error" because Petitioner did not preserve the claim for appeal. The Court then concluded that Petitioner did not establish that the trial court plainly erred.

The Supreme Court has said that "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 2146 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 2532 (1984)). In this case, however, the trial court did not exclude evidence, nor deprive Petitioner of the right to defend himself. Nor did defense counsel interfere with Petitioner's right to defend himself. Petitioner received photographs and at least one lab report on the day of trial (Trial Tr. Vol. I, 11-12, 17, 19, Feb. 4, 2011), and defense counsel stated that Petitioner had failed to provide him with the names and addresses of witnesses and a brief summary of what they might say if they did testify. (*Id.* at 10.)

7

Even assuming that Petitioner was hindered in presenting certain evidence, the information that he sought to present to the trial court was established through other means. Petitioner wanted the medical technician's report and testimony and other lab reports to establish that the complainant was not injured. But the prosecutor was not required to prove a visible or substantial injury. *See People v. Mackle*, 241 Mich. App. 583, 596; 617 N.W.2d 339, 347 (2000) (stating that "[p]ersonal injury for purposes of [Mich. Comp. Laws § 750.520b(1)(f)] includes bodily injury or mental anguish, and physical injuries for this purpose need not be permanent or substantial"). Moreover, the complainant, the responding police officer, and a store clerk established that the complainant did not suffer from any serious physical injuries.

Petitioner alleges that the recording of the 911 call would have helped him, because the complainant did not say anything about criminal sexual conduct in her call to the police. Officer Anthony Coppola, however, established this fact when he testified that he was dispatched to the scene on a complaint of domestic violence, not rape. (Trial Tr. Vol. I, 25, 34, Feb. 4, 2011.)

Finally, as to Rhonda Allen, Petitioner himself testified about his relationship with Ms. Allen and the fact that the complainant was jealous of Ms. Allen. (*Id*. at 116.) Defense counsel subsequently argued to the trial court that the

8

complainant's accusation was retaliation for Petitioner's affair with Ms. Allen.  (*Id.* at 152-53.)

To conclude, the trial court and defense counsel did not prevent Petitioner from presenting a defense.  Further, to the extent that Petitioner lacked some discovery material, the alleged error was harmless because he was able to establish his defense theory through other means.  Habeas relief is not warranted on Petitioner's first claim.

## B.  Claim 2: Prosecutorial Misconduct

Petitioner alleges next that the prosecutor engaged in misconduct by (1) failing to disclose discovery materials, (2) suppressing evidence, (3) using perjured testimony, and (4) misstating testimony during closing arguments.  The Michigan Court of Appeals reviewed Petitioner's prosecutorial-misconduct claims for "plain error" because Petitioner did not preserve his argument for appeal by objecting at trial.

It is well-established that prosecutors "may strike hard blows," but they are "not at liberty to strike foul ones.  It is as much [their] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."  *Berger v. United States*, 295 U.S. 78, 88, 55 S. Ct. 629, 633 (1935).  Nevertheless, "[c]laims of prosecutorial misconduct

are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520,

528 (6th Cir. 2004).

> On habeas review, the standard to be applied to claims of
> prosecutorial misconduct is whether the conduct was "so egregious so
> as to render the entire trial fundamentally unfair." *Cook v.
> Bordenkircher*, 602 F.2d 117, 119 (6th Cir.), *cert. denied*, 444 U.S.
> 936, 100 S.Ct. 286, 62 L.Ed.2d 196 (1979). This court must decide
> whether the prosecutor's statement likely had a bearing on the
> outcome of the trial in light of the strength of the competent proof of
> guilt. *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982).
>
> In deciding whether prosecutorial misconduct mandates that habeas
> relief be granted, the Court must apply the harmless error standard.
> *Eberhardt v. Bordenkircher*, 605 F.2d 275 (6th Cir. 1979). The Court
> must examine "the fairness of the trial, not the culpability of the
> prosecutor." *Serra v. Michigan Department of Corrections*, 4 F.3d
> 1348, 1355 (6th Cir. 1993)(quoting *Smith v. Phillips*, 455 U.S. 209,
> 219, 102 S.Ct. 940, 947 (1982)), *cert. denied*, 510 U.S. 1201, 114
> S.Ct. 1317, 127 L.Ed.2d 666 (1994).

*Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997).

## 1. Discovery

Petitioner states that the prosecutor failed to disclose discovery material and

suppressed evidence that he was ordered to share with the defense. The Supreme

Court has said that "there is no general constitutional right to discovery in a

criminal case," *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S. Ct. 837, 846

(1977), and the contention that the prosecutor violated a state court's discovery

order is not a cognizable claim on habeas corpus review. *Colston v. Burke*, 37 F.

App'x 122, 125 (6th Cir. 2002).

10

Petitioner's related claim alleges that the prosecutor suppressed the results of the physical examination of the complainant, lab reports, a recording of the complainant's 911 call to the police, and photographs of the complainant. Petitioner maintains that the lab reports and photographs were relevant because they revealed that the complainant was not bruised, scarred, torn, or bleeding. Petitioner claims that this evidence is inconsistent with the allegation of rape and could have been used to impeach the complainant.

The Supreme Court has held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97 (1963). There are three components to a true *Brady* claim: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 1948 (1999).

*Brady* generally applies only to a complete failure to disclose, not a tardy disclosure. *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986). There also is "no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where

11

the evidence is available . . . from another source, because in such cases there is really nothing for the government to disclose." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) (internal quotation marks omitted).

The evidence in question here consists of lab reports, photographs, a report on the physical examination of the complainant, and a tape recording of the complainant's call to the police.  Petitioner knew about some of these things before trial.  *See, e.g.,* Prelim. Examination Tr. Vol. I, 4, Aug. 25, 2010) (defense counsel's request for lab results); Prelim. Examination Tr. Vol. II, 20-21, Sept. 8, 2010 (defense counsel's request for photographs of the complainant). The photographs, moreover, were given to the defense on the day of trial (Trial Tr. Vol. I, 11-12, Feb. 4, 2011), and Petitioner stated that he read one lab report that morning (*id*. at 17).  Therefore, he has failed to allege a true *Brady* claim as to the photographs and at least one lab report.

As for the additional lab reports, the medical report on the complainant, and the recording of the 911 call, Petitioner knew enough of the essential facts to permit him to take advantage of any exculpatory information in those items.  He was able to show that the complainant was not seriously injured during the incident with him, that she refused medical treatment, and that she did not report a rape when she called the police.  Petitioner's claim fails because he has not shown that he was prejudiced by the lack of additional evidence.

12

## 2.  Perjury

Petitioner contends that the prosecutor relied on perjured testimony.  The alleged perjury consists of the complainant's trial testimony that her lip and face swelled as a result of Petitioner hitting her.  (*Id.* at 70.)  Petitioner maintains that this was perjury, because the complainant stated at the preliminary examination that she had no visible injuries as a result of Petitioner striking her during the incident in question.  (Prelim. Examination Vol. I, 40, Aug. 25, 2010.)

Prosecutors may not deliberately deceive a court by presenting evidence that they know is false.  *Giglio v. United States*, 405 U.S. 150, 153, 92 S. Ct. 763, 766 (1972).  Nor may they allow false testimony to go uncorrected when it appears. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S. Ct. 1173, 1177 (1959).  But to prevail on a claim that the prosecutor relied on false testimony, a habeas petitioner must show that (1) the testimony was actually false, (2) the testimony was material, and (3) the prosecutor knew the testimony was false.  *Amos v. Renico*, 683 F.3d 720, 728 (6th Cir. 2012); *Coe*, 161 F.3d at 343 (quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)).

The complainant initially testified at the preliminary examination that she had no visible injuries as a result of the incident with Petitioner.  But when the prosecutor inquired as to whether she had any puffiness or swelling, she stated that she had some puffiness and a lot of pain.  (Prelim. Examination Tr. Vol. I, 40-41,

13

Aug. 25, 2010.)  The statement at the preliminary examination that she had some puffiness was consistent with her trial testimony that her face swelled after Petitioner hit her.  The Michigan Court of Appeals correctly concluded that the complainant did not perjure herself.

### 3.  The Closing Argument

Petitioner asserts that the prosecutor misstated the evidence during closing arguments when he said that the complainant initially did not provide any details about the sexual assault because a neighbor was present.  Petitioner claims that there was no testimony on this point.  Petitioner also objects to the prosecutor's comment that Petitioner's testimony about being permitted to drive into his driveway after the alleged incident was not credible.  The Michigan Court of Appeals concluded that the prosecutor's statements were supported by reasonable inferences from the evidence and that there was no misconduct warranting a new trial.

### a.  Legal Framework

Prosecutors may not misrepresent the facts in evidence, nor assert facts never admitted in evidence.  *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000).  But they "must be given leeway to argue reasonable inferences from the evidence.  Where there is conflicting testimony, it may be reasonable to infer, and

accordingly to argue, that one of the two sides is lying." *United States v. Collins*,

78 F.3d 1021, 1040 (6th Cir. 1996)).

> The relevant question is whether the prosecutor['s] comments "so
> infected the trial with unfairness as to make the resulting conviction a
> denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 94
> S.Ct. 1868, 40 L.Ed.2d 431 (1974). Moreover, the appropriate
> standard of review for such a claim on writ of habeas corpus is "the
> narrow one of due process, and not the broad exercise of supervisory
> power." *Id*., at 642, 94 S.Ct., at 1871.

*Darden v. Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2461, 2471 (1986).

### b.  The Complainant's Disclosure of the Details

Petitioner claims that, contrary to the prosecutor's remarks, there was no

evidence that the complainant refrained from providing any details about the

sexual assault because a neighbor was present. Police Officer Anthony Coppola,

however, testified that his first contact with the complainant was in the presence of

her neighbor, and, at that time, the complainant did not refer to the sexual assault.

(Trial Tr. Vol. I, 38, Feb. 4, 2011.) The officer went on to say that, a few minutes

later, the complainant disclosed the details of the sexual assault to him. (*Id*. at 38-

39.)

The prosecutor correctly stated during his rebuttal argument that, initially the

complainant did not go into great detail about the sexual assault, but moments later

she did. The prosecutor reasonably inferred that, when the neighbor was no longer

present, the complainant told the officer everything that occurred.  (*Id*. at  155.)

The prosecutor's remarks did not amount to misconduct.

### c.  The Comment that Petitioner was not Credible

The other statement in dispute is the prosecutor's comment that Petitioner

was not credible because he testified that the police permitted him to "drive around

the police cars, into the garage and close the door and go inside" after the incident

with the complainant.  (*Id*. at 149.)   Petitioner had testified that the police were

everywhere when he returned home after the assault and that the police had his

driveway blocked.  He also testified that the police moved their vehicles when they

saw him so that he could park his car in the garage, get out, and go inside his

home.  (*Id*. at 126.)

Officer Anthony Coppola's police report tends to support Petitioner's

testimony, for it states that "a Chrysler 300 was . . seen entering the driveway and

[going] into the garage."  Pet. for Writ of Habeas Corpus, Ex. D.  Nevertheless,

this was an insignificant fact in the case, and the trial court did not rely on this

aspect of the case when determining that Petitioner was not credible.  Therefore,

even assuming that the prosecutor erred by arguing that Petitioner's testimony on

this point was not credible, the error was harmless.

To conclude, the prosecutor's closing remarks either were not improper or were harmless error.  Thus, habeas corpus relief is not warranted on Petitioner's claims about the prosecutor's closing argument.

## C.  Claims 3 & 7:Purported Wrongdoings of the Trial Court

Petitioner raises several issues about the trial court, claiming that the court abused its discretion and deprived him of a fair trial.  The Michigan Court of Appeals stated that Petitioner's claims about the trial court were not preserved, that Petitioner failed to demonstrate the trial court plainly erred, and that the claims did not warrant relief.

### 1.  Evidentiary Hearing

Petitioner states that the trial court erred by failing to conduct an evidentiary hearing after granting Petitioner's motion for a hearing.  Petitioner wanted an evidentiary hearing to prove that he and the complainant previously had sex after arguing and that what happened on August 5, 2010, was not unusual.  He claims that the probative value of the evidence outweighed any prejudice.

Petitioner argues that an evidentiary hearing was necessary under Mich. Comp. Laws 750.520j (admissibility of evidence of victim's sexual conduct).  This Court, however, may not grant habeas corpus relief for errors of state law.  *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102 (1990).  The complainant, moreover, testified that she and Petitioner previously had consensual sex after

17

arguing with each other. (Trial Tr. Vol. I, 92, Feb. 4, 2011.) Therefore, even if the Court were to construe Petitioner's claim as a due process argument, he was able to establish his point about "make-up sex", and his right to due process was not violated.

### 2. Right to Present a Defense

Petitioner claims that the trial court deprived him of his right to present a defense by proceeding with the trial even though his witnesses were not subpoenaed and several lab reports were missing.

The Court concluded above that the trial court did not interfere with Petitioner's right to present a defense, because the court did not exclude or limit any evidence. Petitioner, moreover, stated on the day of trial that he acquired a lab report that morning, and he implied that he did not want a continuance. (*Id*. at 9, 15, 17.) Defense counsel stated that witnesses were not called because Petitioner failed to provide the names and addresses of the witnesses. (*Id*. at 10.) The Court therefore rejects the contention that the trial court deprived Petitioner of his right to present a defense.

### 3. Inconsistent Verdict

Petitioner claims that the trial court rendered an inconsistent verdict when the court found him guilty of criminal sexual conduct, despite concluding that the credibility of both parties was suspect. It is well established, however, that

"[i]nconsistency in a verdict is not a sufficient reason for setting it aside" on habeas corpus review.  *Harris v. Rivera*, 454 U.S. 339, 345, 102 S. Ct. 460, 464 (1981) (*per curiam*).

Furthermore, the trial court's comment that both parties' credibility was suspect pertained to the conflicting testimony on the robbery charge.  As to the criminal-sexual-conduct charge, the trial court found the complainant's testimony credible and Petitioner's testimony incredible.  (Trial Tr. Vol. II, 6-9, Feb. 8, 2011.)

Even if the acquittal on the robbery charge "rest[ed] on an improper ground, that error would not create a constitutional defect in a guilty verdict that is supported by sufficient evidence and is the product of a fair trial."  *Rivera*, 454 U.S. at 344, 102 S. Ct. at 463.  The trial court's verdict on the criminal-sexual-conduct charge was supported by sufficient evidence, and the court was not prohibited from being lenient on the robbery charge.  *See id.*, 454 U.S. at 348, 102 S. Ct. at 465 (stating that "[t]he Constitution does not prohibit state judges from being excessively lenient").  Petitioner therefore has no right to relief on the basis of his claim about the allegedly inconsistent verdict.

### 4.  Failure to Protect *Brady* Rights

Petitioner asserts that the trial court failed to protect his rights under *Brady* by not enforcing discovery orders to provide him with lab reports and pictures

taken by the police. He admits, however, that he was allowed to see the pictures, and he stated at trial that he was given at least one lab report. The record also indicates that Petitioner was able to advance his defense theory without the items that he claims are still missing. Consequently, he was not prejudiced by the alleged suppression of evidence, and his *Brady* claim fails.

### 5. Failure to Replace Counsel

Petitioner contends in claim three, subsection E, and in claim seven that the trial court violated a Michigan court rule by denying his request for substitution of counsel and an adjournment of the trial. According to Petitioner, substitution of counsel was necessary because he and his attorney disagreed on fundamental trial tactics and, as a result, he was denied a substantial defense.

### a. Legal Framework

Implicit in the Sixth Amendment right to the assistance of counsel in a criminal prosecution "is the right to be represented by counsel of one's own choice." *Linton v. Perini*, 656 F.2d 207, 208 (6th Cir. 1981). "[A] trial court, acting in the name of calendar control, cannot arbitrarily and unreasonably interfere with a client's right to be represented by the attorney he has selected." *Id.* at 209. But "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151, 126 S. Ct. 2557, 2565 (2006). "[T]hose who do not have the means

to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624, 109 S. Ct. 2646, 2652 (1989).

Furthermore, a trial court has "wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." *Gonzalez-Lopez*, 548 U.S. at 152, 126 S. Ct. at 2565-66 (internal and end citations omitted). "A motion for new appointed counsel based upon defendant's dissatisfaction with his counsel previously appointed is addressed to the sound discretion of the trial court." *United States v. White*, 451 F.2d 1225, 1226 (6th Cir. 1971). Factors that courts may consider when reviewing a request for new counsel include: "the timeliness of the motion; the adequacy of the [trial] court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client . . . ." *Martel v. Clair*, 132 S. Ct. 1276, 1287 (2012). When evaluating the extent of the conflict between the defendant and his attorney, a court may consider whether the conflict "was so great that it resulted in a total lack of communication preventing an adequate defense." *United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001).

### b. Application

Petitioner was represented at trial by appointed counsel.  On the day of trial, he asked for substitution of counsel.  The grounds for his request were that his attorney had not been communicating with him, the attorney did not have discovery materials, his witnesses had not been subpoenaed, the attorney did not file a motion about the prosecutor's violation of a discovery order, and the attorney did nothing about the habitual offender notice.  (Trial Tr. Vol. I, 6-9, 15-17, Feb. 4, 2011.)

Defense counsel responded that he was prepared for trial, that Petitioner had failed to produce the names and addresses of the witnesses he wanted, that not all the motions that Petitioner requested were appropriate, and that the habitual offender matter was a sentencing issue, not a trial matter.  (*Id*. at 10-11, 19.)  The prosecutor added that defense counsel had obtained written discovery materials, that photographs from the incident were turned over that morning, and that there were no additional witnesses to substantiate Petitioner's claim that the sex was consensual.  (*Id*. at 11-14.)

The trial court denied Petitioner's request after concluding that "good cause" did not exist to discharge defense counsel.  (*Id*. at 20.)  The Michigan Court of Appeals concluded on direct review that the trial court did not abuse its discretion by declining to appoint another lawyer.

22

This Court agrees with the Michigan Court of Appeals.  Petitioner had previously been granted one substitution of counsel.[2]  His current attorney was prepared to try the case and adequately represented Petitioner.  Furthermore, the trial court made an adequate inquiry into Petitioner's complaint, Petitioner's motion was made at the last minute, and the alleged breakdown in the relationship was not so great that it resulted in a total lack of communication, preventing an adequate defense.  The record, in fact, demonstrates that Petitioner consulted with his attorney at least a couple of times during the trial.  (*Id.* at 111, 136.)  Substitution of counsel would have disrupted the judicial process because the witnesses were present and ready to testify.  The Court concludes that Petitioner was not denied a substantial defense and that he is not entitled to relief on the basis of the trial court's denial of his request for substitution of counsel.

### 6.  The Court's Statement that Evidence was Not Refuted

Petitioner asserts that the trial court erred when it said that Petitioner's comment to the complainant during their sexual encounter was not refuted.  Petitioner did not deny making the contested statement.  Therefore, the trial court did not err when it concluded that the contested remark was not refuted.

---

[2]  Petitioner's trial attorney was his second appointed attorney.  His first attorney was permitted to withdraw from the case because Petitioner was not satisfied with her.  *See* Pretrial Transcript for November 29, 2010.

Even if the court erred, its determination that Petitioner made the statement was only one reason why the court concluded that Petitioner used force to commit sexual penetration.  The other reasons given by the court were that the complainant informed Officer Coppola about the sexual assault, the complainant's testimony by itself was credible, and Petitioner's testimony that there was no force was self-serving, given his testimony that he was engaged to the complainant, but had stayed overnight with another girlfriend.  (Trial Tr. Vol. II, 5-6, Feb. 8, 2011.)

The Court concludes that the trial court's comment was not erroneous and even it was, the error was harmless, given the other reasons for the court's finding that force or coercion was used to accomplish penetration.  The Michigan Court of Appeals reasonably concluded that Petitioner's claim did not warrant relief.

**D.  Claim 4: Ineffective Assistance of Counsel**

In his fourth claim, Petitioner alleges that his trial attorney failed to adequately perform his professional responsibilities.  The Michigan Court of Appeals disagreed, stating that the record did not support Petitioner's contention that his trial attorney was ill-informed or unprepared.  The Court of Appeals also stated that Petitioner had failed to demonstrate that his trial attorney was ineffective for failing to call witnesses.

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), is clearly established federal law for purposes of

24

ineffective-assistance-of-counsel claims. *Cullen v. Pinholster*, 563 U.S. 170, __, 131 S. Ct. 1388, 1403 (2011). When evaluating a claim of ineffective assistance of counsel, a court must determine whether "counsel's performance was deficient" and "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. The "deficient performance" prong of this test "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*., 466 U.S. at 687, 104 S. Ct. at 2064.

The "prejudice" prong requires a petitioner to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*., 466 U.S. at 694; 104 S. Ct. at 2068. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 111-12, 131 S. Ct. at 792 (quoting *Strickland*, 466 U.S. at 693, 104 S. Ct. 2052).

### 1. Pretrial Investigation

Petitioner asserts that his trial attorney failed to conduct basic pretrial investigation, refused to communicate with him, and suppressed evidence. The

Michigan Court of Appeals concluded on review of this claim that the record did not support the contention that defense counsel was ill-informed or unprepared.

The Supreme Court has said that defense attorneys have "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691; 131 S. Ct. 2066. Attorneys also have a duty "to consult with [their] client[s] on important decisions . . . ." *Lewis v. Alexander*, 11 F.3d 1349, 1353-54 (6th Cir. 1993). But an attorney "may exercise his professional judgment with respect to the viability of certain defenses and evidentiary matters without running afoul of the Sixth Amendment." *Id*. at 1354.

Petitioner complained at trial that he had only a fifteen-minute meeting with his attorney before trial. (Trial Tr. Vol. I, 9, Feb. 4, 2011.) But the attorney claimed that he was prepared to proceed with the defense that Petitioner had conveyed to him. The attorney also stated that he spent the prior weekend and previous night preparing for trial, and that he could not say anything more without violating his client's confidentiality. (*Id*. at 10-11.)

The record also indicates that defense counsel assisted Petitioner in presenting his theory of consent and that counsel communicated with Petitioner on important issues during the trial. *See id.* at 6-7 (Petitioner states that he raised the issue of having a bench trial with defense counsel); *Id*. at 111 (Petitioner admits

26

that he and defense counsel discussed his right not to testify and that it was Petitioner's decision to take the witness stand and offer testimony); *Id.* at 135–36 (Petitioner assures the trial court that, after talking with defense counsel, he was waiving the right to have the court consider any lesser-included offenses).

The Court concludes that defense counsel did not fail to investigate the case or fail to communicate with Petitioner. There also is no support in the record for Petitioner's contention that his attorney suppressed evidence. Habeas relief is not warranted on Petitioner's claim.

### 2. Failing to Object to the Prosecutor's Conduct

Petitioner asserts that his attorney failed to subject the prosecution's case to adversarial testing by not objecting to the prosecution's misconduct. The Court determined above that the prosecutor did not commit misconduct or that the alleged misconduct was harmless. Therefore, defense counsel's failure to object to the prosecutor's conduct did not prejudice Petitioner. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013), *cert. denied*, 134 S. Ct. 513 (2013).

### 3. Failure to Present a Defense

According to Petitioner, his attorney failed to present a defense on his behalf. In support of this argument, Petitioner points out that his attorney did not make an opening statement and did not call any witnesses besides Petitioner.

27

Petitioner further alleges that his attorney did not present any evidence with which to impeach the complainant.

"An attorney's decision not to make an opening statement 'is ordinarily a mere matter of trial tactics and . . . will not constitute . . . a claim of ineffective assistance of counsel.' " *Millender v. Adams*, 376 F.3d 520, 525 (6th Cir. 2004) (end citations omitted).  Petitioner's trial, moreover, was a bench trial, and defense counsel made a deliberate decision to dispense with his opening statement.  His decision obviously was a trial tactic, because he implied that the statement would have been brief and that it was more important to proceed with Petitioner's testimony than to give an opening statement.  (Trial Tr. Vol. I, 23, 111, Feb. 4, 2011.)

As for the failure to call witnesses, defense counsel stated that Petitioner had not provided him with the witnesses' names and addresses.  Although Petitioner asserts that he could not have known the name and address of the medical technician who examined the complainant, the medical technician apparently would have testified that the complainant was not bleeding or injured.  Petitioner was not prejudiced by the lack of the medical technician's testimony because the prosecutor did not have to prove a physical injury, and the trial court was made aware that the complainant's only injuries were some swelling and redness on the face and a temporary problem with her ear.

The record belies Petitioner's claim that defense counsel failed to provide any impeachment evidence.  Defense counsel cross-examined Police Officer Anthony Coppola about the fact that he was dispatched to the scene on a complaint of domestic violence and that the complainant's initial words to him were that her boyfriend had been beating her, not that she had been raped.  Counsel also elicited Officer Coppola's testimony that the complainant refused medical treatment and that her only visible injury was  puffiness on her face.  (*Id*. at 34-36.) On cross-examination of the complainant, defense counsel elicited testimony that the complainant never told Petitioner that she did not want to have sex with him on the day in question.  (*Id*. at 76-77.)  Defense counsel elicited further testimony that: the complainant did not try to escape when Petitioner left her for a minute to use the bathroom (*id.* at 77-78); that Petitioner did not strike her during  sexual intercourse (*id*. at 78-79); and that she did not seek help or flee when she and Petitioner went to the cell phone store after the alleged rape (*id*. at 82-83).

Defense counsel elicited testimony from the store clerk that the complainant did not ask for help or appear to be injured.  (*Id*. at 103.)  Defense counsel produced Petitioner as a witness and elicited his testimony that the complainant's jealousy of Petitioner's relationship with a woman named Rhonda was the reason for her anger against Petitioner.  (*Id*. at 116-17,122, 128.)  Defense counsel also elicited the complainant's testimony that she did not protest when Petitioner asked

her to take off her clothes and Petitioner's testimony that he would not have had sex with the complainant if she had said she was not interested in sex that morning. (*Id*. at 120-21.)  Finally, in his closing argument, defense counsel argued that the complainant was retaliating against Petitioner for his admitted affair with another woman.  (*Id*. at 152-53.)  Contrary to Petitioner's allegations, his attorney did not fail to present a defense.

### 4.  Failure to File a Motion to Dismiss

Petitioner asserts that his attorney should have filed Petitioner's *pro se* motion to dismiss, which was based on the prosecution's alleged violation of discovery orders and refusal to turn over discovery materials.  The record, however, indicates that defense counsel had some discovery materials before trial and that he received additional materials (photographs and a lab report) before the trial commenced on February 4, 2011.  Any additional discovery in all likelihood would not have changed anything.  Therefore, defense counsel was not ineffective for failing to move to dismiss the case for lack of discovery.

## E.  Claim 5: Cumulative Errors

Petitioner claims that the cumulative effect of the errors in his case was so prejudicial as to deprive him of a fair trial.  The Michigan Court of Appeals stated on review of this claim that, because it found no errors in Petitioner's trial, there were no errors to aggregate.  This Court rejects Petitioner's claim because it is not

a cognizable claim on habeas corpus review.  *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011).

**F.   Claim 6: Order to Pay Court-Appointed Attorney Fees**

In his sixth claim, Petitioner blames the trial court for failing to assess his ability to pay before ordering him to reimburse the county for court-appointed attorney fees.  Petitioner claims that he has no assets, property, or savings and that money has been deducted from his account without a showing that he has the ability to pay $1,900.00 in attorney fees.

The Michigan Court of Appeals rejected this claim because a trial court is not required to assess a defendant's ability to pay at sentencing; rather the assessment is made when the fee is enforced.  *Parks,* 2012 WL 3101832, at *8 (citing *People v. Jackson*, 483 Mich. 271, 275, 292; 769 N.W.2d 630 (2009)).

This Court finds no merit in Petitioner's claim because a petitioner is entitled to the writ of habeas corpus only if he is "in custody" in violation of federal law.  28 U.S.C. § 2254(a).  A monetary fine is not a sufficient restraint on liberty to meet the "in custody" requirement.  *See United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995) (addressing the issue in the context of a petition brought under 28 U.S.C. § 2255).  Therefore, Petitioner is precluded from challenging the state court's imposition of a fine or attorney fees.

**G.  Claim 8: Sufficiency of the Evidence**

In his eighth and final claim, Petitioner alleges that there was insufficient evidence of first-degree criminal sexual conduct.  Specifically, Petitioner contends that there was insufficient evidence of personal injury.  Petitioner also points out that the responding officer was dispatched to the parties' home on the basis of a domestic violence complaint, not rape (Trial Tr. Vol. I, 25, 34, Feb. 4, 2011) and the complainant testified at trial that she did not tell Petitioner to stop what he was doing (*id*. at 58, 76-77).

### 1.   Clearly Established Federal Law

The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.  But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788-89 (1979) (internal citation and footnote omitted) (emphases in original).

This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Id.,* 443 U.S. at 324 n. 16, 99 S. Ct. at 2792 n.16.  As charged in this case, the prosecutor had to prove that Petitioner engaged in sexual penetration with another person, that he used force or

coercion to accomplish sexual penetration, and that he caused personal injury to the complainant.  Mich. Comp. Laws § 750.520b(1)(f); *People v. Petrella*, 424 Mich. 221, 238-39; 380 N.W.2d 11, 18 (1985).  "Personal injury" includes bodily injury or mental anguish.  *Mackle*, 241 Mich. App. at 596; 617 N.W.2d at 347.

### 2.  Application

The Michigan Court of Appeals stated that, with respect to the element of personal injury,

> Defendant admitted that he slapped CW and dragged her from the living room into the bedroom and then sexually penetrated her—apparently while she cried and wretched.  She also testified that she complied with his commands because she feared that he would kill her.

*Parks*, 2012 WL 3101832, at *2.

Regarding the element of force or coercion, the Court of Appeals stated that, according to the evidence, Petitioner "struck CW multiple times, dragged her into the bedroom, and then forced himself on her as she cried."  *Id.*  The prosecutor was not required to corroborate the complainant's testimony on this element of the crime with any additional evidence.  *People v. Drohan*, 264 Mich. App. 77, 89; 689 N.W.2d 750, 756 (2004)(citing Mich. Comp. Laws § 750.520h).

A rational trier of fact could have concluded from the evidence taken in the light most favorable to the prosecution that Petitioner used force and coercion to accomplish penetration and that he caused the complainant to suffer a personal

injury in the form of bodily injury or mental anguish.  Thus, the state appellate court's conclusion that the evidence was sufficient to find Petitioner guilty of first-degree sexual conduct was not contrary to, or an unreasonable application of, *Jackson*.  Petitioner has no right to relief on the basis of his sufficiency-of-the-evidence claim.

### IV. Certificate of Appealability

"[A] prisoner seeking post-conviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition.  Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 1034 (2003).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*,  537 U.S. at 327, 123 S. Ct. at 1034.

Reasonable jurists would not find the Court's assessment of Petitioner's claims debatable or wrong.  Nor would they conclude that Petitioner's claims are adequate to deserve encouragement to proceed further.  The Court therefore declines to issue a certificate of appealability on any of Petitioner's claims.

34

Petitioner nevertheless may appeal this Court's decision *in forma pauperis*,

because an appeal could be taken in good faith.

## V.  Conclusion

For the reasons given above,

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is

**DENIED**.

**IT IS ORDERED** that Petitioner may proceed *in forma pauperis* on appeal

because an appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3).

**SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: May 10, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of
record and/or pro se parties on this date, May 10, 2016, by electronic and/or U.S.
First Class mail.

s/ Richard Loury
Case Manager

35